IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E.I. DU PONT DE NEMOURS & CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 15-280-SLR |
| | ) |
| MACDERMID PRINTING SOLUTIONS, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

At Wilmington this 2nd day of July, 2015, having reviewed defendant's motion to dismiss, transfer or stay, and the papers filed in connection therewith; and having heard oral argument on the same; said motion shall be denied for the reasons that follow.

1. **Procedural background.** The parties share a convoluted history which starts more than a decade ago. During the time period 2001 - 2002, both plaintiff E. I. du Pont de Nemours and Company ("DuPont") and defendant MacDermid Printing Solutions, LLC ("MacDermid") were working on developing and offering as a commercial product thermal digital flexographic printing plates and thermal flexographic processors.[1] MacDermid entered into agreements with Cortron Corporation ("Cortron") whereby Cortron agreed to manufacture MacDermid's "LAVA" thermal flexographic processors and develop a next-generation processor.

---

[1] "Thermal flexographic processors are machines that develop plates used for printing labels on flexible commercial packaging." (D.I. 10 at 3)

2. On April 1, 2008, DuPont filed a lawsuit against Cortron in the United States District Court for the District of Minnesota ("the Minnesota lawsuit"), alleging that the equipment that Cortron manufactured for MacDermid infringed DuPont's U.S. Patent No. 6,797,454 B1 ("the '454 patent"). MacDermid was not named as a party to the Minnesota lawsuit. In June 2008, DuPont and Cortron resolved the Minnesota lawsuit pursuant to a confidential settlement agreement ("the Agreement"). The Agreement provided, among other things, that Cortron would cease manufacturing technology "related to the thermal development of photopolymer plates without the express written consent of DuPont." (D.I. 1, ex. A at ¶ 3.3) Cortron represented that it had the right to enter into the Agreement without breaching any other agreement or obligation to a third party. (Id. at ¶ 2.2) DuPont agreed to dismiss the Minnesota lawsuit and to indemnify Cortron under certain circumstances specified in the Agreement. (Id. at ¶¶ 3.1-4.2) The Agreement provides for the application of Delaware law, and either a Delaware or Minnesota venue for the resolution of any disputes arising from the Agreement.

3. In September of 2008, MacDermid filed a lawsuit against Cortron in the United States District Court for the District of Connecticut, alleging (*inter alia*) that Cortron violated state and federal antitrust laws ("Connecticut I"). MacDermid did not name DuPont as a party to the lawsuit, but did allege that Cortron's actions and the Agreement were parts of an alleged "conspiracy" between DuPont and Cortron to violate the antitrust laws.[2]

---

[2]For example, MacDermid characterized the patent enforcement and settlement of the Minnesota lawsuit as a "sham" orchestrated to impair MacDermid's ability to compete with DuPont.

2

4. On February 12, 2010, DuPont brought an action in the United States District Court for the District of Connecticut against MacDermid, alleging that MacDermid had infringed the '454 patent based on its supply of LAVA thermal flexographic processors ("Connecticut II"). DuPont moved to consolidate its infringement lawsuit against MacDermid with Connecticut I. In response, MacDermid moved to transfer DuPont's infringement lawsuit to the United States District Court for the District of New Jersey, where MacDermid and DuPont were already engaged in two other patent infringement actions. The court in Connecticut found that New Jersey was the more convenient forum for litigating DuPont's patent claims, and transferred Connecticut II to New Jersey on June 16, 2010 ("the New Jersey lawsuit"). (D.I. 12 at 1)

5. In its fourth amended answer in the New Jersey lawsuit, MacDermid asserted (*inter alia*) multiple antitrust counterclaims, including claims relating to the Agreement. (D.I. 13, ex. B) According to DuPont, following transfer, MacDermid moved to stay the New Jersey lawsuit pending *inter partes* reexamination; the stay was granted and remains in place. (D.I. 10 at 5) According to MacDermid, "[i]t just happen[s] to be the case that MacDermid's suit against Cortron in Connecticut went to trial before MacDermid's antitrust suit against DuPont in New Jersey." (D.I. 12 at 2)

6. Connecticut I was tried before a jury and, on July 8, 2014, a verdict was returned in favor of MacDermid, which verdict was affirmed post-trial.[3] The verdict was

---

[3]DuPont asserts that, during the course of the trial in Connecticut I and over the objection of Cortron, MacDermid introduced evidence and argument relating to the Agreement, without giving DuPont the opportunity to participate in the litigation. (*See* D.I.10 at 6-7) MacDermid responds that, "in reality," DuPont asserted "complete control over the Cortron defense and trial as required" in the Agreement. (D.I. 12 at 2)

3

reduced to a final judgment on February 17, 2015 ("the Judgment"). On Feburary 24, 2015, Cortron filed an emergency motion seeking to extend the automatic stay of execution afforded by Rule 62(a) of the Federal Rules of Civil Procedure, which motion was denied. Neither Cortron nor DuPont posted a supersedeas bond to secure the judgment pending appeal.

7. Pursuant to Fed. R. Civ. P. 62(a), no proceedings could be taken to enforce the Judgment "until 14 days ha[d] passed after its entry." Within the 14-day period, MacDermid issued a press release announcing that, "[a]lthough Cortron itself closed its doors in late 2008, the investigation surrounding the lawsuit found that DuPont had agreed to indemnify Cortron for the lawsuit filed by MacDermid and has paid for Cortron's litigation costs." (D.I. 11, ex. G) On February 27, 2015, Cortron filed its notice of appeal, which appeal is currently pending before the United States Court of Appeals for the Second Circuit.

8. On March 3, 2015, also within the 14-day period and based on its belief that MacDermid would contend that DuPont was responsible for the Judgment in Connecticut I via the Agreement, DuPont filed a complaint against MacDermid in the Superior Court of the State of Delaware ("the Delaware lawsuit"). The following day, MacDermid filed a separate action against DuPont in Connecticut, asserting (*inter alia*) that it is a third-party beneficiary of the Agreement ("Connecticut III"). (D.I. 8, ex. J at ¶ 14) On March 30, 2015, MacDermid filed a notice of removal in the Delaware lawsuit (D.I. 1); on May 6, MacDermid filed the instant motion to dismiss, transfer, or stay. (D.I. 6) On May 21, 2015, Connecticut III was stayed in deference to this court's decision on MacDermid's motion.

4

9. **Legal standard.** The first-filed rule provides that, "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941). If applied, the rule counsels that a later-filed action involving the same controversy should be dismissed, transferred, or stayed in favor of the first-filed action. *See E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976-79 (3d Cir. 1988) ("Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule."). "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Univ. of Pa.*, 850 F.2d at 971 (citation omitted). Factors that have been regarded as proper bases for departing from the first-to-file rule include bad faith, forum shopping, when the second-filed action has "developed further than the initial suit," and "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." *Id.* (citations omitted).

10. **Analysis.** Ideally, the parties at bar should have resolved their business dispute years ago in the context of one of the prior lawsuits. However, DuPont did not see fit to join MacDermid in the Minnesota lawsuit, and MacDermid actively opposed the opportunities to litigate the dispute both in Connecticut I and Connecticut II/New Jersey. I conclude that, under these circumstances,[4] there is no sound basis to depart

---

[4]Given such experiments as the Patent Cases Pilot Program, where forum shopping has been encouraged by Congress, the court finds this factor to be of little

5

from the first-to-file rule. This conclusion find supports in MacDermid's theory of the case, where MacDermid has claimed to be an "intended (or third party) beneficiary" of the Agreement, which Agreement is governed by Delaware law and the parties thereto have consented "to the personal jurisdiction of the state or federal courts within Delaware. . . ." (D.I. 8, ex. D at ¶ 4.5; D.I. 8, ex. J at ¶ 14) *See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202-04 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser,* 490 U.S. 495 (1989) (third party beneficiary bound to a forum selection clause in the underlying contract); *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.,* 269 F.3d 187, 195 (3d Cir. 2001) ("a third party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary.").

11. **Conclusion.** For the reasons stated, MacDermid's motion to dismiss, stay or transfer is denied. An appropriate order shall issue.

                                                                                    _____
                                                                                    United States District Judge

---

significance. Both parties have pursued litigation without joining the instant dispute; if that can be deemed "bad faith," then both parties have engaged in such.

6