## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E.I. DU PONT DE NEMOURS & CO., | ) | |
| | ) | |
| Plaintiff / Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civ. No. 15-280-SLR |
| MACDERMID PRINTING SOLUTIONS L.L.C., | ) | |
| | ) | |
| Defendant / Counterclaim Plaintiff. | ) | |

Peter J. Walsh, Jr., Esquire, Ryan C. Cicoski, Esquire, and Jesse L. Noa, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware.  Counsel for Plaintiff E.I. du Pont de Nemours & Co.

William J. Marsden, Jr. Esquire of Fish & Richardson P.C., Wilmington, Delaware. Counsel for MacDermid Printing Solutions LLC.  Of Counsel: John R. Horvack, Jr., Esquire, Fatima Lahnin, Esquire, and John L. Cordani, Jr., Esquire of Carmody Torrance Sandak & Hennessey LLP, New Haven, Connecticut.

## MEMORANDUM OPINION

Dated: March 31, 2017
Wilmington, Delaware

*Jue F. Robinen*
**ROBINSON, Senior District Judge**

## I.    INTRODUCTION

Plaintiff E.I. DuPont de Nemours & Company ("DuPont") and defendant MacDermid Printing Solutions, LLC ("MacDermid") are commercial competitors in the field of thermal flexographic printing plates and processors.  In another lawsuit in another court, MacDermid sued its former manufacturer Cortron Corporation ("Cortron") for allegedly conspiring with DuPont in violation of state and federal antitrust laws. When the court in that case returned a verdict in MacDermid's favor and awarded damages, DuPont initiated the instant lawsuit seeking a declaratory judgment that, *inter alia*, MacDermid cannot enforce that judgment against DuPont.  MacDermid has asserted a counterclaim alleging that DuPont's failure to satisfy the judgment breached a contract between Cortron and DuPont to which, MacDermid claims, it is a third-party beneficiary.  Currently before the court are cross-motions for summary judgment.  (D.I. 45; D.I. 50)  The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  For the reasons discussed below, MacDermid's motion for summary judgment is denied, and DuPont's motion for summary judgment is granted in part and denied in part.

## II.    BACKGROUND

MacDermid develops and sells as a commercial product thermal flexographic printing plates and processors.  (D.I. 15 ¶ 1)  MacDermid contracted with Cortron to manufacture MacDermid's "LAVA" thermal flexographic processors and develop a next generation processor.  (*Id.*)  LAVA competes against DuPont's FAST system.  (D.I. 46 at 1)  All three companies have brought multiple suits against each other in multiple

jurisdictions.  (See D.I. 15 ¶¶ 2-8)  The court reduces this convoluted history to the
following essential facts.

On April 1, 2008, DuPont filed a lawsuit against Cortron in the United States
District Court for the District of Minnesota (the "Minnesota lawsuit"), alleging that the
equipment that Cortron manufactured for MacDermid infringed DuPont's U.S. Patent
No. 6,797,454 ("the '454 patent").  (Id. at 2)  MacDermid was not named as a party to
the Minnesota lawsuit.  In June 2008, DuPont and Cortron resolved the Minnesota
lawsuit by entering into a confidential settlement agreement (the "Settlement
Agreement"). The Settlement Agreement provided, among other things, that Cortron
would: (1) transfer all rights and title in all thermal technology to DuPont; (2) cease
manufacturing, selling, servicing, and technically supporting any thermal technology; (3)
cease all research, development, design and manufacture of any process or equipment
related to thermal technology without DuPont's written consent; (4) transfer to DuPont
all technical information relating to all thermal technology; and (5) assign all intellectual
property to DuPont. (D.I. 48-4 at A483-93, § 3.1-3.5)

In exchange, DuPont agreed to indemnify and hold Cortron harmless from all
costs and expenses related to certain claims they expected MacDermid to assert.  (Id.
at § 4.2) Specifically, the Settlement Agreement provides that:

> DuPont ... shall defend, indemnify and hold Cortron harmless from and
> against any and all damage, liability, claims or suit arising from or incident
> to compliance with the provisions of this Agreement, and the transfer and
> assignment of the Thermal Technology, the Intellectual Property and the
> Technical Information governed by this Agreement.  Specifically, DuPont
> agrees to defend, indemnify and save Cortron ... harmless from all costs
> and expenses, including court fees, attorneys' fees, damages, losses
> and expenses, of and from all claims (a) asserted against Cortron by
> MacDermid Printing Solutions, LLC ("MacDermid") for Cortron's actions
> or omission involving DuPont on or after April 1, 2008; (b) arising out of

2

> Cortron's compliance with the terms of this Agreement; (c) arising
> between Cortron and MacDermid related to inventorship, joint ownership,
> breach of confidentiality due to disclosure to DuPont; or (d) arising out of
> the existing business relationship between MacDermid and Cortron with
> respect to the Gen 2 Patent under the Joint Development Agreement
> between Cortron and MacDermid ....

(*Id.*)

The Settlement Agreement was executed on June 5, 2008. (*Id.*) On July 21,

2008, MacDermid moved to amend its counterclaims in a previously existing patent

infringement lawsuit between DuPont and MacDermid pending before the United States

District Court for the District of New Jersey (the "New Jersey lawsuit"). (D.I. 48-1 at

A164-249) MacDermid's amendment asserted antitrust counterclaims based in part on

the Settlement Agreement between DuPont and Cortron. (*Id.*) On September 29, 2008,

MacDermid brought similar antitrust claims against Cortron in the United States District

Court for the District of Connecticut ("Connecticut I"), the forum required by the

exclusive forum selection clauses in MacDermid's contracts with Cortron. (D.I. 46 at 5;

D.I. 48 at A9, A20) MacDermid did not name DuPont as a party to Connecticut I.[1] (*Id.*)

On January 22, 2009, the New Jersey court granted MacDermid's motion to amend,

and the antitrust counterclaims against DuPont, referred to as the "non-patent

counterclaims," were added to the New Jersey lawsuit. (D.I. 48 at A52) On that same

date, the New Jersey court also granted DuPont's motion to bifurcate the non-patent

claims and give precedence to DuPont's patent claims.[2] (D.I. 54 at 3)

---

[1] In other proceedings, DuPont has asserted that Connecticut lacks personal jurisdiction over it for claims related to the Settlement Agreement. (D.I. 56 at A1470-76)

[2] On February 12, 2010, DuPont brought a new patent infringement action against MacDermid in the United States District Court for the District of Connecticut ("Connecticut II") alleging infringement of its '454 Patent. (D.I. 15 ¶ 4) The Connecticut court transferred Connecticut II to New Jersey. (*Id.*)

On July 8, 2014, the jury in Connecticut I returned a verdict against Cortron and in favor of MacDermid. (D.I. 15 ¶ 6) On February 17, 2015, the verdict was reduced to a final judgment that awarded $19,757,854 in compensatory damages, $27,538,880 in punitive damages, $2,641,587 in attorneys' fees, and $14,732 in offer-of-compromise interest, for a total award of $64,670,821 (the "Judgment"). (D.I. 1-1 ¶¶ 26-27) A few weeks later, DuPont filed a complaint in the Superior Court of the State of Delaware (the "Delaware lawsuit") seeking a declaratory judgment that MacDermid cannot sue DuPont for satisfaction of the Judgment or for any other claims related to the Settlement Agreement and/or Connecticut I. (D.I. 1-1) The following day, March 4, 2015, MacDermid filed a new action against DuPont in the United States District Court for the District of Connecticut ("Connecticut III"), asserting that it is a third-party beneficiary of the Settlement Agreement and DuPont breached that agreement by not satisfying the Judgment. (D.I. 15 ¶8) MacDermid then removed the Delaware lawsuit to this court and asserted a counterclaim for breach of contract identical to the only claim it asserted in Connecticut III. (D.I. 1; D.I. 18)

Connecticut I was appealed to the Second Circuit, which reversed the judgment as to the antitrust claims, affirmed the judgment in all other respects, and remanded for a recalculation of damages. (D.I. 46 at 6) The claims in the New Jersey lawsuit are still being actively litigated. (D.I. 54 at 3-4) Connecticut III has been dismissed in favor of this action. (*See MacDermid Printing Solutions, LLC v. E.I. du Pont de Nemours & Co.*, Civ. No. 15-320 (D. Conn. July 24, 2015) (D.I. 32))

## III.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of

demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact

cannot be—or, alternatively, is—genuinely disputed must support the assertion either by

citing to "particular parts of materials in the record," or by "showing that the materials

cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then

"come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party "must present

more than just bare assertions, conclusory allegations or suspicions to show the

existence of a genuine issue." *Podohnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d

Cir. 2005) (internal quotation marks omitted). Although the "mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment," a factual dispute is genuine where "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## IV. DISCUSSION

MacDermid has moved for summary judgment on its sole counterclaim that DuPont breached the Settlement Agreement by failing to satisfy the Judgment in Connecticut I. (D.I. 18; D.I. 45) DuPont has moved for summary judgment on its request for a declaratory judgment that: (1) MacDermid lacks standing to enforce the Settlement Agreement; (2) MacDermid waived any and all rights to pursue claims against DuPont arising out of or relating to Connecticut I and/or the Settlement Agreement; and (3) MacDermid waived any and all rights to seek enforcement of the Judgment against DuPont.[3] (D.I. 1-1 ¶¶ 41-43; D.I. 51) If the court declares, as DuPont requests, that MacDermid lacks standing to enforce the Settlement Agreement, then MacDermid's request for summary judgment on the counterclaim must be denied. Accordingly, the court will first address the issue of standing and second address the issue of waiver raised in DuPont's remaining declarations.

---

[3]    In its complaint, DuPont also sought a declaratory judgment that it has no indemnification obligations arising from or related to tort-based claims or punitive damages. (D.I. 1-1 ¶ 44) DuPont did not brief that claim and, therefore, the court will not address it.

## A.     Standing

Before the court can determine whether DuPont breached the Settlement Agreement by failing to satisfy the Judgment, it must first find that MacDermid has standing to pursue this claim. "As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions. Mere incidental beneficiaries have no legally enforceable rights under a contract." *NAMA Holdings, LLC v. Related World Market Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007). A contract creates an intended beneficiary where: "(1) the contracting parties intended that the third party would benefit from the contract, (2) the benefit is intended to be a gift or in satisfaction of a pre-existing obligation to the third party, and (3) the intent to benefit the third party is a material part of the contracting parties' purpose in entering into the contract." *Gerstley v. Mayer*, 2015 WL 756981, at *7 (Del. Super. Feb. 11, 2015); *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001).

MacDermid did not address each of these elements, but its counterclaim most clearly runs afoul of the second prong. (D.I. 46 at 6-12) Depending on whether a contract confers a gift or satisfies a pre-existing obligation, intended beneficiaries can be categorized as either donee beneficiaries or creditor beneficiaries. MacDermid does not claim to be a donee beneficiary and does not meet the criteria for being a creditor beneficiary. To be a creditor beneficiary, Cortron must have owed an obligation to MacDermid "at the time of the contract" which the contract provided for Dupont to satisfy. *Pettit v. Country Life Homes, Inc.*, 2009 WL 846922, at *3 (Del. Super. Mar. 31, 2009); *State Dept. of Transp. v. Figg Bridge Eng'rs, Inc.*, 2011 WL 5593163, at *2 (Del.

7

Super. Nov. 9, 2011) (explaining that the contract made DelDOT a creditor beneficiary if

Figg owed DelDOT an obligation "at the time of entering into the [s]ubcontract" with

Mactec, which the subcontract provided for Mactec to fulfill). At the time the Settlement

Agreement was executed, Cortron did not owe MacDermid a legal obligation that the

indemnification provision satisfied. At most, DuPont and Cortron expected that DuPont

would have to indemnify Cortron for future claims MacDermid may assert once it

learned of the Settlement Agreement, making MacDermid an expected, but not current,

creditor. Under Delaware law, "expected creditors of a [an entity] are incidental

beneficiaries," and are not entitled to sue for breach of an agreement to which they were

not a party. *Madison Realty*, 2001 WL 406268, at \*5. Because the indemnification

provision neither confers a gift nor satisfies a pre-existing obligation, MacDermid is not

an intended beneficiary of the Settlement Agreement.

The court's conclusion is bolstered by Restatement (Second) of Contracts § 302

cmt. b, illus. 3, which illustrates the difference between an incidental and intended

beneficiary:

> B promises A to pay whatever debts A may incur in a certain undertaking.
> A incurs in the undertaking debts to C, D and E. If the promise is ... a
> promise that B will pay C, D and E, they are intended beneficiaries...; if
> the money is to be paid to A in order that he may be provided with money
> to pay C, D and E, they are at most incidental beneficiaries.

Here, DuPont has not promised to pay MacDermid, but instead to pay Cortron in order

that Cortron can satisfy any judgments that MacDermid may have against it.

Accordingly, MacDermid is at most an incidental beneficiary.

MacDermid asserts that it is an intended beneficiary, because the indemnification

provision identifies it by name. (D.I. 46 at 11; D.I. 60 at 2) However, the cases on

which MacDermid relies for this proposition are distinguishable. In those cases, unlike

8

the case here, there was a pre-existing obligation owed to a third party at the time of the contract which the contract satisfied. In *Global Energy*, the indemnification provision in a contract between GFAC and Peabody identified BlueTee by name but, more importantly, GFAC had a pre-existing contractual obligation to indemnify BlueTee for certain environmental liabilities, which GFAC's contract with Peabody satisfied. *Global Energy Fin. LLC v. Peabody Energy Corp.*, 2010 WL 4056164, at *10, 25 (Del. Super. Oct. 14, 2010). Similarly, in *Sears*, Jardel and Robbins had a contract to construct a shopping center, and Robbins and Hirsch had a subcontract under which Hirsch would perform the plumbing, heating, and air-conditioning work required under the contract. *Sears, Roebuck & Co. v. Jardel Co.*, 421 F.2d 1048, 1050 (3d Cir. 1970). The court found that Jardel was a creditor beneficiary of the subcontract, because it explicitly identified Jardel as the entity to whom Hirsch was providing services. *Id.* at 1054. The subcontract met the elements for creating a creditor beneficiary, because it satisfied part of Robbins' pre-existing obligation to Jardel to construct the shopping center. Accordingly, the court finds that MacDermid lacks standing to enforce the Settlement Agreement, because it is neither a signatory to nor an intended beneficiary of that agreement. MacDermid's motion for summary judgment on its counterclaim for breach of the Settlement Agreement is denied.

## B. Waiver

DuPont argues that claim preclusion (also known as res judicata) bars MacDermid from seeking "the same or new remedies" against DuPont that it already obtained, or could have obtained, in Connecticut I. (D.I. 51 at 6) Accordingly, DuPont seeks a declaration that: (1) MacDermid waived any and all rights to pursue claims

against DuPont arising out of or relating to Connecticut I and/or the Settlement Agreement; and (2) MacDermid waived any and all rights to seek enforcement of the Judgment against DuPont. (D.I. 1 ¶¶42-43) MacDermid has asserted counterclaims in this lawsuit and the New Jersey lawsuit based on events related to Connecticut I, the Settlement Agreement, and/or the Judgment. The court is aware of no other claims that MacDermid has asserted or threatened to assert against DuPont arising out of or relating to these subjects. Accordingly, DuPont's declarations seek to preempt any claims that MacDermid has brought or may bring in this lawsuit, the New Jersey lawsuit, and/or some unknown future lawsuit.

For a court to exercise jurisdiction under the Declaratory Judgment Act, there must be an "actual controversy." 28 U.S.C. § 2201(a). More specifically, the controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007); *Wyatt V.I. Inc. v. Gov't of V.I.*, 385 F.3d 801, 806 (3d Cir. 2004) ("It must be a real and substantial controversy … as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."). In addition, the controversy must be ripe for review. *Wyatt*, 385 F.3d at 806; *EchoStar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447, 451 (D. Del. 2007). Even if all of the jurisdictional prerequisites are satisfied, it remains within the court's discretion whether to exercise jurisdiction and grant the requested relief. *MedImmune*, 549 U.S. at 136. In deciding whether to exercise its discretion to issue a declaratory judgment, the court may consider: (1) whether declaratory relief would resolve the legal uncertainty that gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of

10

the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; and (7) prevention of the use of the declaratory action as a method of "procedural fencing" or as a means to provide another forum in a race for res judicata. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d. Cir. 2014).

Taking into account the jurisdictional prerequisites and the factors guiding the court's exercise of discretion, the court declines to exercise jurisdiction in favor of issuing the declarations regarding waiver that DuPont has requested. The court has already granted DuPont relief with respect to MacDermid's counterclaim, thereby extinguishing all claims MacDermid has asserted against DuPont in this litigation. In the interests of comity, the court declines to issue a declaration that in effect would end MacDermid's non-patent counterclaims in the New Jersey lawsuit (which the parties are still actively litigating). *See Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1337-41 (N.D. Ill. Dec. 6, 1996) (declining in the interest of comity to issue a declaratory judgment that claims pending before a foreign court are barred by issue and claim preclusion). Any waiver defenses DuPont raised here can or should have been raised in New Jersey. This leaves only future unknown claims MacDermid may assert against DuPont based on events related to Connecticut I, the Settlement Agreement, and/or the Judgment. Because MacDermid has not yet threatened or asserted those claims, there is no controversy ripe for review. Accordingly, the court does not have jurisdiction to issue a res judicata declaration as to those future claims. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (stating that "unasserted, unthreatened, and

unknown claims do not present an immediate or real threat" and, therefore, it is improper to issue a declaration that those future claims are barred by res judicata).

## V.   CONCLUSION

For the foregoing reasons, MacDermid's motion for summary judgment (D.I. 45) is denied, and DuPont's motion for summary judgment (D.I. 50) is granted in part and denied in part. The court finds that MacDermid lacks standing to enforce the Settlement Agreement. Accordingly, judgment is entered in favor of DuPont and against MacDermid on MacDermid's counterclaim for breach of contract. The court declines to exercise jurisdiction over DuPont's remaining requests for declaratory judgment.

.